

**GRAYSON & ASSOCIATES, P.C.**
124 WEST PUTNAM AVENUE
SECOND FLOOR
GREENWICH, CONNECTICUT 06830
Telephone (203) 622-8100
Facsimile (203) 622-8104
E-Mail contact@grayson-law.com

April 28, 2008

**By Facsimile (21 Pages)**
**(212) 805-7917**

Hon. Robert P. Patterson
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 2550
New York, NY 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/28/08
```

Re:  **Kudan Rice Mills Ltd. v. JLM International, Inc.**
     08 Civ. 3699 (DLC)

**MEMO ENDORSED**

Dear Judge Patterson:

We represent Defendant JLM International, Inc., and write to request an emergency hearing under Maritime Rule E(4)(f) to vacate the Ex Parte Rule B Attachment wrongfully obtained and served by Plaintiff Kudan Mills. We just learned of the attachment this morning and Judge Cote cannot hear this until next week and directed us to Your Honor. Cutting to the quick, the attachment should be vacated because the contracts at issue involved only the sale of goods by JLM to Kundan, **and thus there is no maritime jurisdiction and Rule B is unavailable.** See Aston Agro-Indistrial, AG v. Star Grain, 2006 WL 3755156 (SDNY 2006) which is on all-fours, wherein Judge Daniels held as follows:

> "In this case, the contracts are not maritime contracts because their primary objective was not the transportation of goods by sea. Instead, their primary objective was, undoubtably, the sale of wheat. That the wheat was transported on a ship does not make the contracts maritime contracts any more than it would make them aviation contracts had the wheat been shipped via airplane. Nor were they contracts between a seller and a shipper. In fact, Aston entered into two separate charter parties to accomplish the shipment of the wheat, and it was the primary maritime objective of *those* contracts to transport the wheat by sea. Thus, the charter parties between the seller and the shipper, like the bills of lading in *Kirby*, are maritime contracts, see, e.g. Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 2006 WL 3017982 5 (2d Cir. October 24, 2006) ("Charter parties and bills of lading are interpreted using the ordinary principles of maritime contract law."). The contracts for the sale of wheat are not."

Aston is attached hereto as Exhibit A.

The contracts at issue are identical to the Aston contracts. In both contract JI-3782 (Ex. B) (which was performed) and JI-3792S (Ex. C), JLM was to sell and Kudan was to buy 1,000 metric

tons of Phenol to be delivered to Kudan "FOB Huelva Spain." Under the INCO terms, FOB means that the Buyer (Kudan) had to make its own arrangements for the chartering and supplying of a vessel. (See Buyer's FOB Requirements, Ex. D). JLM's sole obligation was to deliver the Phenol in Spain at the ship's rail. (See Seller's FOB Requirements, Ex. E) **Accordingly, and under the settled cases, these are sales contracts and not maritime contracts, therefore as a matter of law, the attachment should be vacated.**

While we anticipate that Kundan will claim that this is a "mixed-contract" the Second Circuit, as Judge Daniels noted, has rejected this claim in cases like this, where the primary focus of the contract is the sale of goods, and the only maritime connection is the fact that the goods are traveling by water:

"But in Folksamerica Reinsurance v. Clean Water of NY, Inc., 413 F.3d 307 (2d Cir.2005), the Second Circuit interpreted *Kirby* as only augmenting the "incidental to" exception for mixed contracts to **the general rule that maritime jurisdiction applies only to contracts that are "wholly" or "purely" maritime**. Id. at 314-15. According to Folksamerica then, when deciding whether a mixed contract falls into this exception, a court must determine whether the contract's "principle objective" is the accomplishment of a maritime transaction, not whether the non-maritime portions of the contract are "merely incidental" to the maritime ones."

Here obviously the primary focus of the contracts was the sale of the Phenol. JLM had no maritime obligations, such as supplying a vessel. Accordingly and based on the foregoing we respectfully request that (i) the Court schedule a hearing as early as tomorrow afternoon (if possible), as JLM's New York bank accounts are frozen by virtue of the attachment and (ii) vacate the attachment.

As always, we thank Your Honor for the Court's time and attention to this matter.

Respectfully submitted,

Eric D. Grayson

cc:  Kevin J. Lennon, Esq.                                By Facsimile (212) 490-6070
     Counsel for Plaintiff

*Application granted. The hearing will be held on 4/29/08 at 3PM.*

*So ordered*

*[signature] USDJ*

*Part I*

4/28/08